United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRU K. "KEN" HSU, individually and as a trustee of the DARRU K. HSU AND GINA T. HSU LIVING TRUST, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBS FINANCIAL SERVICES, INC.,<br><br>Defendant.<br>_____ / | No. C 11-02076 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND VACATING HEARING** |

## INTRODUCTION

In this putative class action, plaintiff alleges that defendant violated two provisions of the Investment Advisers Act, 15 U.S.C. 80b-6 and 80b-15. Defendant now moves for dismissal pursuant to FRCP 12(b)(6). For the reasons discussed below, the motion to dismiss is **GRANTED**.

## STATEMENT

In July 2007, plaintiff Darru K. "Ken" Hsu entered into a "wrap" fee program with defendant UBS Financial Services, Inc. whereby plaintiff received investment, advisory, execution, clearing, and custodial services in a bundled form (Compl. at 6 n.1). Hsu then chose Horizon Asset Management as its investment manager from a list that UBS had compiled. Hsu and Horizon entered into a separate agreement with a separate fee for portfolio management services. Hsu paid quarterly fees to UBS until he decided to terminate his individual and trust accounts in July 2010.

Hsu avers that UBS's services, which included advisory services such as "recommended asset allocation" (Compl. ¶ 24), were provided for "in its capacity as an investment advisor" (Compl. ¶ 25). The complaint quotes the contract, which reads "your account will be designated as 'advisory' and our obligations to you as they pertain to that account will be that of an investment advisor" (Compl. ¶ 26). Yet, at the same time, the contract inserted a so-called "hedge clause" which intended to limit legal claims that might otherwise be asserted against Hsu's investment advisor (Compl. ¶ 31–33). The complaint avers that inclusion of such contradictory clauses violated the Investment Advisers Act of 1940, 15 U.S.C. 80b-6, in that UBS misled Hsu and others like him into believing that they had waived their rights protected under the Act. Furthermore, plaintiff argues that the "hedge clause" is itself illegal under Section 80b-15, and must be declared void. Plaintiff seeks rescission of the contract pursuant to 15 U.S.C. 80b-15, restitution for sums paid to defendant by all class members, and declaratory relief that nullifies the "hedge clause" in and rescinds *all* of UBS's contracts for this particular "wrap" fee program.

Defendant denies that its contract was false or misleading. UBS argues that it clearly outlined its statutory duties, distinguishing between two types of relationships with clients: advisory and brokerage. A brochure provided to clients, which is referenced throughout the complaint, explained "that the investment advisory and brokerage services were separate and distinct and each was governed by different laws and separate contracts" (Dkt. No. 17 Exh. B at 1). It further stated that "[w]hile there are similarities among the brokerage and advisory services we provide, depending on the capacity in which we act, our contractual relationship and legal duties to you are subject to a number of important differences" (*ibid.*). The contract with Hsu was repeatedly labeled "advisory."

UBS also denies that its contract and brochure disclaimed any duties that it owed to Hsu or that it required Hsu to waive any rights under the Act. The contract and brochure expressed that plaintiff had no obligation to choose from UBS's list of potential investment managers and UBS had no duty to verify the quality of those listed managers (Dkt. No. 17 Exh. B at 3, Exh. A at 1). In its "hedge clause," UBS disclaimed any responsibility for Horizon's independent

2

conduct as Hsu's investment manager. Nowhere in the contract or brochure did UBS say that it disclaimed liability for its own fraudulent conduct. The complaint does not allege that either.

Before filing this action in federal court, the parties engaged in arbitration with the Financial Industry Regulatory Authority. The arbitration panel did not address the instant Investment Advisers Act claims. Instead, the arbitration panel dismissed with prejudice all of Hsu's claims over which the panel had jurisdiction[*] (Dkt. No. 23 Exh. B at 5). The arbitration panel found that they had "no jurisdiction over further allegations the [c]laimants wish[ed] to bring" (*ibid.*). Indeed, plaintiff's counsel included in the record on this motion a letter from defendant regarding arbitration, which stated that plaintiff had attempted to assert a claim under the Investment Advisers Act, but that the claim was not within the jurisdiction of the arbitration forum (Dkt. No. 29 Exh. 1). Neither party contests this issue and this order finds that there is no problem in taking up these claims because they were not taken up in arbitration.

Defendant requests that judicial notice be taken of Hsu's agreement with Horizon and the arbitration panel ruling (Dkt. No. 23). Plaintiff requests that judicial notice be taken of defendant's letter to the arbitration panel (Dkt. No. 29). As described above, the instant complaint asserts claims for violation of Section 80b-6 and 80b-15 of the Investment Advisers Act.

**ANALYSIS**

This motion raises three main disputes: which statute of limitations applies to the claims, whether such statute of limitations has barred the claims, and whether the complaint states a claim on which relief can be granted.

**1.    STANDARD OF REVIEW.**

To survive a motion to dismiss for failure to state a claim, a pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. FRCP

---

[*] The dismissed claims include "1) common law fraud; 2) violation of SEC Advisers ACT and FINRA Suitability Rules, 3) violations of the Exchange ACT, Section 10(b) and Rule 10b-5; the Advisers ACT; and FINRA Rule 2020 — Use of Manipulative, Deceptive or Other Fraudulent Devices; 4) violations of FINRA Rule 2210 — Communications with the Public; and 5) [v]iolation of FINRA Rule 3130 and Rule 3010 — Supervision" (Dkt. No. 23 Exh. B at 4).

3

12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While the court "must take all the factual allegations in the complaint as true," "it is not bound to accept as true a legal conclusion couched in factual allegation." *Id.* 1949–50. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal without leave to amend is only appropriate when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (citation omitted). FRCP 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

When a defendant moves to dismiss a claim because it is allegedly time-barred, that motion "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citation omitted). At the initial pleading stage, this order is concerned only with the legal feasibility of the complaint, rather than the weight of the evidence that might support it.

### 2. WHICH STATUTE OF LIMITATIONS APPLIES?

The Investment Advisers Act itself does not designate a statute of limitations and case law is split as to which statute applies. There are two potential limitations. Before 2002, courts followed *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir.1992), in actions under the Investment Advisers Act. In *Kahn*, the court found that the limitations periods used in securities actions were most appropriate for Investment Advisers Act claims because the factual

4

and legal issues were similar. Securities actions have dual one- and three-year limitations periods. The one-year limitation starts running at actual knowledge of the violation, or notice of facts that with reasonable diligence would lead to knowledge. The three-year cap acts as a statute of repose and prohibits claims brought after three years of the alleged violation.

In 2002, Congress passed the Sarbanes-Oxley Act, 28 U.S.C. 1658, which specified two- and five-year limitations for a "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws." These fraud claims are limited by the earlier of actual discovery (two-year limitation) or the violation itself (five-year limitation).

Since the enactment of Sarbanes-Oxley, courts have split as to which time-bar to apply to actions under the Investment Advisers Act. *See, e.g.*, *Dommert v. Raymond James Fin. Servs., Inc.*, No. 1:06-CV-102, 2009 WL 275440, at *6–8 (E.D. Tex. Feb. 3, 2009) (applying *Kahn* to an Investment Advisers Act action, but acknowledging split in authority). The tension in determining which statute applies arises because the Act covers more than just fraud. In other words, not all claims under the Act are fraud-based. The claims that are fraud-based, however, are governed by the Sarbanes-Oxley limitations periods. *See, e.g.*, *Chang v. Citigroup Inc.*, No. C 09-02966 SI, 2010 WL 520511, at *3 (N.D. Cal. Feb. 6, 2010).

Here, Hsu pleads violation of Section 80b-6 of the Act and requests rescission of the contract and restitution. This section makes it unlawful for investment advisers to defraud clients or potential clients. 15 U.S.C. 80b-6. As this is a fraud-based claim, it is limited by the two- and five-year Sarbanes-Oxley limitations.

Plaintiff also asserts violation of Section 80b-15 of the Act and requests voiding of the "hedge clause," rescission of the contract, and restitution for fees and other consideration paid. Section 80b-15 provides:

(a) Waiver of compliance as void

Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter or with any rule, regulation, or order thereunder shall be void.

5

(b) Rights affected by invalidity

Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

There is no statute of limitations restricting the ability of a client of an investment adviser to raise Section 80b-15 to defeat an exculpatory contract provision interposed by an investment adviser in response to a claim by the client not otherwise barred by a statute of limitations. For example, if a client sues on a claim that itself is within, say, a five-year limitations period, and then the investment adviser interposes by way of defense an exculpatory clause illegal under Section 80b-15, the defense fails, period. There is no such thing as a statute of limitations on raising Section 80b-15 defensively. In this instance, Section 80b-15 is used as a shield.

On the other hand, where a client sues affirmatively under Section 80b-15 for rescission and restitution, seeking a declaration that the provision is void, then Section 80b-15 has been transformed from a shield into a sword. In this circumstance, there must be a limitations period because affirmative relief is sought. Although Section 80b-15 does not authorize a private right of action, some district courts have found an implied right of action to sue for affirmative relief. *See, e.g.*, *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 262 (S.D.N.Y. 2006). This order assumes without deciding that an affirmative right of action is implied. The immediate point is that such an implied right of action to seek affirmative relief must be deemed subject to a limitations period of some sort.

To take the problem one step further, where, as here, a plaintiff seeks to sue on behalf of a class to rescind hundreds of other contracts and/or to obtain other affirmative relief on their behalf, there would be further Rule 23 questions to ponder. Perhaps other clients are perfectly happy with their contracts and would resent any efforts to meddle in their contractual relationship. Or, perhaps absent class members would be better off by waiting to litigate the invalidity issue when, if ever, the clause is invoked by the investment adviser in an actual controversy with the

6

absent member rather than to roll the dice on a generic and untailored class-wide determination with plaintiff conducting the litigation for them. We must remember that there is no time limit on the absent class members' right to raise Section 80b-15 defensively.

To return to our immediate problem, the immediate issue is: what is the limitations period for affirmatively asserted claims under Section 80b-15. This section, unlike Section 80b-6, does not sound in fraud. As such, this order will apply the one- and three-year *Kahn* limitations to the Section 80b-15 claim for the direct attack on the validity of the "hedge clause."

### 3. DO THE STATUTES OF LIMITATIONS BAR THESE CLAIMS?

For the fraud-based Section 80b-6 claim, the two-year limitation begins at knowledge of the violation. Defendant argues that plaintiff knew about the "hedge clause" when he signed the contract in 2007. According to UBS, the Section 80b-6 claim ran in 2009 — two years before the complaint was filed. Yet, the complaint alleges that "[p]laintiff first became aware of [d]efendant's violation of the Act, and [d]efendant's continuance of a relationship and/or practice in violation of the Act within the 24-months prior to the filing of this action" (Compl. ¶ 22). Taken as true for the purpose of this motion, the claim is still viable.

According to the facts as pled in the complaint, the Section 80b-6 claim was also filed within the five-year cap. The earliest possible violation occurred in 2007 when the plaintiff signed the contract containing the alleged misleading terms. Regardless of whether there were distinct subsequent violations or a performance of violations, as alleged, this action was filed within five years from that first alleged violation. The Section 80b-6 claim is not conclusively time-barred at this stage.

On the other hand, the Section 80b-15 claim is limited by the one- and three-year *Kahn* periods. One violates Section 80b-15(a) by creating a condition that "binds [a] person to waive compliance with [a] provision" of the Act. The complaint alleges that defendant's "hedge clause" waived a non-waivable duty, which — if true — supposedly violated the Act and voided the contract. In this context of a direct attack on the validity of the waiver clause, the statute of limitations ran in 2010, before this action was brought.

7

Plaintiff argues that each time he paid a quarterly fee, a new violation was triggered because the fee was paid pursuant to the contract in which the clause could be found (Opp. 7). Plaintiff cites *Kahn*, 970 F.2d at 1040, in asserting that if a contract is terminable, each new payment represents a new contract, a new sale, and begins a new running of the statute of limitations. Yet, *Kahn* only supports that proposition as to certain claims and certain types of contracts. For example, when the claim is discrimination in an installment contract offered on different terms on the basis of race and the focus of the complaint is a continuing conspiracy, the limitations period does not begin just at the execution of the initial contract. In contrast, where the claim is for rescission due to a term in the contract that violated the Act, the action accrued "when the agreement[ was] entered into." *Kahn*, 970 F.2d at 1042. In *Kahn*, the court held that "an investment adviser harms the purchaser of his investment advice at the time he enters into a contract that commits the purchaser to pay for the advice." *Id*. at 1041. "Similarly, an illegal clause in a contract harms an investor at the time the contract is executed." *Kleinman v. Oak Assocs., LTD.* No. 5:07CV0698, 2007 WL 2071968, at *3 (N.D. Ohio July 16, 2007). So too here.

Alternatively, plaintiff argues that UBS violated the Act every day that the parties performed under the contract. Absent other allegations of misfeasance, simply performing under a contract that has an alleged invalid term does not start anew the limitations period. Because this order finds that the statute of limitations has run for plaintiff's direct attack on the "hedge clause" claim, defendant's motion to dismiss plaintiff's claim for violation of Section 80b-15(a) is **GRANTED**. Plaintiff's claim for violation of 80b-6 still stands after applying the statute of limitations.

### 4. HAS THE COMPLAINT STATED A CLAIM AS TO THE REMAINING SECTION 80b-6 CLAIM?

As stated, the complaint asserts that defendant's brochure and contract were deceptive and thus violated Section 80b-6. Section 80b-6 reads, in pertinent part,

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly–
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client; [or]

8

> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

Plaintiff alleges that UBS "established an investment advisory relationship with plaintiff" (Compl. ¶ 23). UBS's brochure outlined "Our Fiduciary Responsibilities as an Investment Adviser" and identified the legal standards that the Act imposes on such fiduciary relationships (Compl. ¶ 27). The contract reiterated the "advisory" nature of the relationship and referenced its "obligations" outlined in its brochure (Dkt. No. 17 Exh. A at 2). The contract designated Horizon as plaintiff's chosen "Investment Manager" (*ibid.*). Then, the contract stated that its clients agreed not to hold UBS liable for any "error of judgment, mistake of law, negligence, willful misfeasance, or bad faith on the part of the *Investment Manager*" (Compl. ¶ 29, Dkt. No. 17 Exh. A at 4) (emphasis added). The complaint alleges that these statements might be clear when read separately, but when read together, are contradictory and misleading. As such, the clauses supposedly constituted a violation of Section 80b-6.

The contract and brochure themselves, which are appended as exhibits to the complaint and are referenced and quoted throughout, are appropriately considered by this order. A district court may dismiss a claim based on plaintiff's asserted interpretation of a contract if the unambiguous plain meaning of its terms clearly do not support that interpretation. *See Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 Fed. App'x 123, 124 (9th Cir. 2007). The complaint claims that the contract is deceptive because the "hedge clause," which limited liability for Horizon's misconduct, contradicted previous clauses in which UBS outlined its liability as an investment advisor. The contract stated, "[a]s your investment advisor, we [UBS] are considered to have a fiduciary relationship with you and are held to legal standards under the Investment Advisers Act of 1940" (Compl. ¶ 27). Later in the contract, the "hedge clause" dictated that:

> UBS Financial Services Inc. shall not be liable for and Client agrees to hold UBS Financial Services Inc. harmless against all losses to Client from any error of judgment, mistake of law, negligence, willful misfeasance, or bad faith on the part of the Investment Manager [Horizon] or any other matter within the Investment Manager's control such as . . . compliance with applicable law.

(Compl. ¶ 29). Yet, the "hedge clause" was not incongruous with other terms in the contract. The contract never disclaimed liability for UBS's own role as an investment advisor. Rather, it

9

disclaimed liability for any misconduct on behalf of Horizon, Hsu's separate investment manager. Plaintiff's claim rests upon the juxtaposition of supposedly contradictory terms in the contract and brochure. As there is no contradiction, the complaint lacks a factual allegation that would support a violation of Section 80b-6 based on fraudulent or deceptive contract terms.

For the reasons stated, defendant's motion to dismiss plaintiff's claim of violation of Section 80b-6 is **GRANTED**.

\*         \*         \*

The complaint also asserts a contingent claim for declaratory relief that the "hedge clause" is void and against public policy. As the predicate claim lacks merit, this claim also fails.

## CONCLUSION

For the reasons discussed herein, the motion to dismiss plaintiff's claims is **GRANTED**. The hearing set for August 18 is **VACATED**. Plaintiff may seek leave to amend the complaint and will have **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein. If such motion is not filed by the deadline, this case will be closed.

**IT IS SO ORDERED.**

Dated: August 5, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE