IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRU "KEN" HSU, individually and as a trustee of the DARRU K. HSU AND GINA T. HSU LIVING TRUST, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>UBS FINANICIAL SERVICES, INC.,<br><br>   Defendant. | No. C 11-02076 WHA<br><br>**ORDER DENYING MOTIONS TO SET ASIDE JUDGMENT AND FOR DEFAULT JUDGMENT; AND VACATING HEARING** |

**INTRODUCTION**

This order arises from a putative class action dismissed in August 2011. *Pro se* plaintiff now moves to set aside the judgment in favor of defendant for fraud on the court. Plaintiff also moves for default judgment against defendant. For the foregoing reasons, plaintiff's motions are **DENIED**. The hearing for March 13 is **VACATED**.

**STATEMENT**

The background of this action has already been set forth in the August 2011 dismissal order (Dkt. No. 35). In brief, *pro se* plaintiff Darru "Ken" Hsu entered into a "wrap" agreement for investment, advisory, execution, clearing, and custodial services with defendant UBS Financial Services, Inc. Hsu also entered into a separate agreement with a third party, Horizon Asset

Management, chosen from a list of potential investment managers provided in the wrap contract. Though the distinction between the services contractually provided by UBS and Horizon is at the heart of Hsu's federal claims, Horizon is not a defendant in this case. Hsu terminated his accounts with UBS in July 2010.

Prior to this federal action, Hsu, proceeding with counsel, filed a claim with the Financial Industry Regulatory Authority. The arbitration panel dismissed all claims over which it had jurisdiction, including a common-law fraud claim and alleged violations under the Investment Advisers Act, the Securities Exchange Act, and various FINRA rules.

In April 2011, Hsu commenced this action against UBS, claiming Investment Advisers Act violations not addressed in the FINRA proceedings. In his complaint, Hsu averred that UBS provided services "in its capacity as an investment advisor," but that a "hedge clause" in the wrap agreement impermissibly limited legal claims against UBS as an investment advisor (Compl. ¶ 25). Hsu alleged that this language violated Section 80b-6 of the Investment Advisers Act because it led him to believe that he had waived his protected rights under the Act, and alleged that all such hedge clauses in UBS's wrap contracts should be declared void under Section 80b-15. The only relief sought by Hsu's complaint was rescission of the wrap agreement and repayment of any fees or consideration paid to UBS. Hsu additionally sought class certification under Federal Rule of Civil Procedure 23.

The August 2011 order dismissed Hsu's first amended complaint for failure to state a claim. The dismissal order: (1) found that Hsu's fraud-based Section 80b-6 claim was not barred by the two- or five-year statute of limitations set out by the Sarbanes-Oxley Act; (2) dismissed Hsu's Section 80b-6 claim because the contract terms were not contradictory and therefore could not be fraudulent or deceptive; (3) dismissed Hsu's Section 80b-15 claim, which was barred by both the one- and three-year statute of limitations found in *Kahn v. Kohlberg, Kravis, Roberts, &*

2

*Co.*, 970 F.2d 1030, 1042 (2nd Cir. 1992); and (4) dismissed a contingent claim for declaratory relief requesting that the undersigned judge void the "hedge clause" on public policy grounds.

The dismissal order permitted Hsu an opportunity to propose a second amended complaint. Hsu did not amend, and judgment was entered on August 29, 2011. Shortly thereafter, plaintiff appealed. During the appeal process, plaintiff terminated counsel and has since proceeded *pro se*. In February 2013, our court of appeals affirmed the dismissal for failure to state a claim, and later denied an en banc hearing. The Supreme Court denied a petition for a writ of certiorari in October 2013.

Now *pro se*, Hsu moves to set aside the judgment pursuant to FRCP 60(b)(6) and FRCP 60(d)(3). Although his brief raises numerous challenges that are difficult to follow, the essence of Hsu's motion is that UBS has committed fraud on the court by falsifying two documents that it proffered for judicial notice on June 3, 2011: (1) a signed agreement between Hsu and Horizon, independent of the wrap contract, and (2) the FINRA arbitration panel ruling (Dkt. No. 14). Hsu asserts that the dismissal order should not have relied upon the June 3 documents, and that judgment in defendant's favor should, therefore, be set aside. In addition, Hsu has moved for default judgment against defendant, despite the fact that judgment has already been entered in this case against Hsu. This order decides all motions below.

**ANALYSIS**

Hsu presents four grounds for setting aside the judgment under FRCP 60(b)(6) and FRCP 60(d)(3): (1) falsification of judicially noticed documents; (2) improper dismissal of the entire class; (3) misallocation of prosecutorial burden; and (4) various allegations of unlawful activities by UBS and others. Hsu presents no evidence to support these accusations. In addition, Hsu moves for default judgment against UBS.

3

**1.     FRCP 60(b)(6).**

FRCP 60(b) states (emphasis added):

> The court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake . . . (2) newly discovered evidence . . . (3) fraud [or] . . . misrepresentation or misconduct by an opposing party . . . [or] (6) *any other reason that justifies relief*.

FRCP 60(c) specifies that motions brought under FRCP 60(b)(1)–(3) be brought within a year of the entry of judgment, and mandates that *all* FRCP 60(b) motions be brought "within a reasonable time."

The use of FRCP 60(b)(6) is limited to instances where "the reason for granting relief is not covered by any of the other reasons set forth in Rule 60." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007). "Extraordinary circumstances are required to bring the motion within the 'other reason' language and to prevent clause (6) from being used to circumvent the 1-year limitations period." *Liljeberg v. Heath Serv. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988) (internal quotations omitted). According to our court of appeals, "extraordinary circumstances" justifying relief under the rule are those which "prevented a litigant from seeking earlier, more timely relief," further stating that "relief normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *Delay*, 475 F.3d at 1044 (internal quotations omitted).

Hsu's invocation of FRCP 60(b)(6) must be denied for two reasons. *First*, Hsu does not demonstrate that his reasons for requesting relief fall outside those listed in FRCP 60(b)(1 – 3). His central argument — that UBS defrauded the court by falsifying the June 3 documents — falls under the fraud, misrepresentation, or misconduct language of FRCP 60(b)(3), not FRCP 60(b)(6). *Second*, while it has been three years since the dismissal order, nowhere in his motion does Hsu endeavor to explain any injury or external circumstance that caused the delay in his filing, as

4

required in this circuit. Relief under FRCP 60(b)(6) is therefore **DENIED**.

### 2.   FRCP 60(d)(3).

Courts have the authority under FRCP 60(d)(3) to set aside judgments obtained by fraud. The power to set aside judgments on this basis has no time limit, but should be exercised "with restraint and discretion." *U.S. v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011) (internal quotations omitted). For a judgment to be set aside for fraud on the court under FRCP 60(d)(3), the moving party must show "clear and convincing evidence" establishing the fraud. *Ibid.* (internal quotations omitted). As our court of appeals has stated:

> Fraud on the court should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself. . . . [Movant] must demonstrate, by *clear and convincing evidence*, an effort . . . to prevent the judicial process from functioning in the usual manner. They must show more than perjury or nondisclosure of evidence, unless that perjury or nondisclosure was *so fundamental that it undermined the workings of the adversary process itself*.

*Id.* at 444–45 (emphasis added) (internal quotations omitted). In holding that no fraud was committed on the court, *Stonehill* focused on whether the alleged fraud or misrepresentation significantly changed the information available to the court or was related to facts "critical to the outcome of the case." *Id.* at 446, 452.

#### A.   June 3 Documents.

Hsu contends that UBS falsified "judicially noticed" documents (Dkt. No. 57 at 1), including (1) the FINRA arbitration panel ruling, which "concealed defendant's criminal theft, extortion, and conspiracy" (Dkt. No. 57 at 12); and (2) the "[Horizon] fiduciary authorization as 'the fact for a separate agreement.'" According to Hsu, this purported falsification caused the undersigned judge to "err[] in granting the motion to dismiss." Finally, Hsu contends that the asserted judicial notice of the June 3 documents necessarily led to the dismissal of Hsu's claims and denied him access to appellate review (Dkt. No. 57 at 6).

5

These contentions fail for two reasons. *First*, Hsu's theories fail to clearly and convincingly demonstrate fraud on the court under FRCP 60(d)(3). *Second*, although defendant submitted a request for judicial notice, the dismissal order neither explicitly noticed the June 3 documents nor relied on them in dismissing Hsu's complaint.

### *(1)   FINRA Panel Ruling.*

Hsu asserts that the June 3 documents, including the FINRA arbitration panel ruling, were "falsified." To show such falsification, Hsu incorporates the brief submitted in his petition to our court of appeals for en banc rehearing (Dkt. No. 57 at 13–17). The brief alleges that (1) the contract's arbitration clause violated FINRA rules; (2) UBS improperly persuaded FINRA not to exercise jurisdiction over Hsu's Adviser's Act claims; (3) UBS "carried out theft, extortion, perjury, and conspiracy in arbitration" by stealing unspecified account numbers; (4) FINRA arbitrators ignored "repeated default judgment motions;" (5) arbitrators consented to UBS's requests for "illegal" discovery; and (6) the arbitration award did not "comport with adjudicative facts."

These contentions were not newly discovered between the dismissal order and the appellate review process. In fact, Hsu states in the current motion that he "uncovered this illegal arbitration agreement *in FINRA arbitration*" (Dkt. No. 57 at 14) (emphasis added). Moreover, though now proceeding *pro se*, Hsu was represented by counsel during his prosecution of this case in the district court, and as Hsu's separate, unrelated request for judicial notice points out, both parties were "obviously on notice" to documents pertaining to the FINRA proceedings (Dkt. No. 29 at 2).

Hsu's contentions regarding the FINRA ruling are fundamentally misplaced. Hsu does not explain how any of the above alleged misconduct by UBS or abirtrators during FINRA arbitration could have defrauded *this* court. Even if the FINRA panel ruling had been judicially noticed, Hsu still does not present any evidence to show how a ruling that dismissed independent causes of

6

action would have undermined the adjudication of Hsu's claims in federal court. Hsu has shown no evidence establishing that there has been fraud committed by means of this document.

### *(2)  Horizon Agreement.*

Hsu next argues that the dismissal order should not have relied on Hsu's separate asset management agreement with Horizon, also submitted by UBS in its request for judicial notice. Like the FINRA arbitration panel ruling, however, the purported agreement was never judicially noticed, and the dismissal order did not rely upon it. In finding that the "hedge clause" was not deceptive, the dismissal order *did* note that Hsu had designated Horizon as its investment manager, but this information was derived from an attachment to the complaint. In asserting that there was no separate agreement with Horizon, Hsu is merely attempting to relitigate claims already dismissed. Even if UBS had fraudulently deceived Hsu into signing multiple agreements, as asserted by the instant motion, such information would have had no effect on the dismissal order.

### *(3)  Cumulative Effect of Judicially Noticed Documents.*

Hsu asserts that the June 3 documents "compelled" the Court to dismiss this case (Dkt. No. 57 at 2). This is inaccurate. The dismissal order found that Hsu's claims either (1) did not meet the statute of limitations under *Kahn* or (2) were without substantive merit. Neither the FINRA arbitration award nor the separate agreement with Horizon were necessary to reach the above conclusions. Hsu does not offer any cogent theory as to how the contents of the June 3 documents could undermine the adversary process, and he does not provide clear and convincing evidence that this was the case. The reasoning of the dismissal order shows that the same decision would have been reached whether or not UBS's proffered documents had been judicially noticed.

Hsu also contends that the dismissal order "blocked" his access to relief in the court of appeals and the Supreme Court (Dkt. No. 57 at 1). Not true. Hsu was offered an opportunity to amend his complaint, but instead sought immediate appellate review. The fact that Hsu's appellate

strategy did not succeed does not mean that there has been fraud committed upon this Court. There is no evidence to show that the dismissal order was undermined by the June 3 documents, nor is there evidence showing that the dismissal order somehow restricted Hsu's access to proper judicial review.

### B.  Improper Dismissal of "Class."

Hsu further argues that "[UBS] misled the court using 12(b)(6) motion and judicial notice based on Hsu **alone** (see defendant's case caption), while the court dismissed the **entire** class action" (Dkt. No. 57 at 2) (emphasis in original).  This argument holds no water.  At the time of dismissal, there had been no class certification under FRCP 23, and therefore there was no class. Hsu remains the sole plaintiff in this case, and his claims were properly dismissed without regard to other putative class members.

### C.  Misallocation of Prosecutorial Burden.

Hsu further argues that because the dismissal order gave leave to amend, it "shifted the burdens of fiduciary and regulatory compliance to plaintiff" (Dkt. No. 57 at 18).  Hsu does not believe he should have the burden to show UBS's "epic regulatory violations" (*ibid.*).  Neither UBS's actions nor the dismissal order shifted any burden to Hsu that was not already there, and such concerns do not relate to his motion for fraud on the court.

In addition, Hsu's reply that UBS should be required to meet the same burden in its opposition to this motion as it would in a motion for summary judgment. Hsu's reply states:

> The burden of proof for opposing this Rule 60(d)(3) motion is derived
> from defendant's Rule 12(b)(6) motion which would have been converted
> into a summary judgment [motion] under Rule 12(d), had defendant not
> forced the court to take judicial notice . . . .  [A]s the [opposition] failed
> to provide any "response" showing there is a genuine issue for
> []blocking[] trial, [UBS] **failed the burden of proof**

(Dkt. No. 68 at 3) (emphasis in original). *Stonehill* places the burden in this FRCP 60(d)(3) motion squarely on Hsu, who as the moving party must establish fraud on the court through clear and convincing evidence. *Stonehill* at 443; *see also England v. Doyle*, 281 F.2d 304, 309–10 (9th Cir. 1960). Hsu's attempts to shift the burden have no legal foundation.

### D. Other Accusations of Unlawful Conduct.

Hsu asserts that the contested "hedge clause" from the original action "violated the regulations of the Advisers Act [relating to] narcotics trafficking, terrorist sanctions, and embargoed foreign countries" (Dkt. No. 57 at 18). Moreover, he asserts that "in litigation, defendant engaged in steadfast RICO racketeering conspiracy . . . stemming from the illegal MAC contract and arbitration agreement under the "compliance" (agreement) of the MAC Wrap Procedures and the MAC Compliance Guide" (*ibid.*). Hsu also states, without further explanation, that "defendant deceived this court on the time-bar" (Dkt. No. 57 at 15) (emphasis removed).

Hsu's contentions do not differentiate between illegal acts in a general sense and acts that would show fraud on the court under FRCP 60(b)(3). Moreover, Hsu has not demonstrated how such actions would have contaminated the process of adjudicating his claims, and does not back up his assertions with evidence. It is not enough for Hsu to say, "One way or the other, defendant committed fraud on the court . . . and perjury" (Dkt. No. 57 at 7). Hsu bears the burden of justifying the exceptional remedy he seeks, and fails to do so. Hsu's would, in fact, fail to meet a far lighter burden — he simply has not presented any persuasive evidence of fraud on this Court. As a result, the motion under FRCP 60(d)(3) is **DENIED**.

### 3. ADDITIONAL REQUESTS FOR RELIEF.

In his motion to set aside the judgment under FRCP 60(b)(6) and 60(d)(3), plaintiff additionally requests (1) an "equitable bifurcated jury trial," (2) legal fees, (3) and court appointment of class counsel. Defendant also asserts that "the court has [the] power to order

9

criminal sanctions under RICO . . . and the Advisers Act against all conspirators, including the highest authorized officer, employee, body, or constituent overseeing the MAC program and litigation." Regardless of whether such relief is within scope of Hsu's motion, he has not shown evidence that would justify any of the above remedies.

### 4. MOTION FOR DEFAULT JUDGMENT.

On February 18, Hsu requested that "the [C]lerk enter the default of [UBS] for failure to defend against this action in a timely manner" (Dkt. No. 61 at i), and now moves for default judgment against UBS (Dkt. No. 62). Hsu does so because UBS did not initially respond within an opposition to the motion under FRCP 60(b)(6) and FRCP 60(d)(3). After being notified by the Clerk of the pertinent deadline, UBS requested more time; it then filed opposition within two days of the February 19 order granting a short extension.

Even if UBS had chosen not to oppose the motion, however, default judgment under FRCP 55 is intended for "parties against whom a judgment for affirmative relief is sought." Because Hsu chose not to amend his complaint, judgment in this action has already been entered in favor of UBS. Hsu seeks to set aside that judgment, rather than affirmative relief against UBS. Default judgment is, therefore, inappropriate. The motion is **DENIED.**

### CONCLUSION

For the reasons stated, Hsu's motion to set aside the judgment entered against him based on FRCP 60(b)(6) and FRCP 60(d)(3) is **DENIED**. Hsu's motion for default judgment is also **DENIED**. The hearing of March 13 is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: March 6, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10